FILED'06 DEC 07 09:16 USDC-ORP

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

UNITED STATES OF AMERICA,                05-CR-479-BR

        Plaintiff,                OPINION AND ORDER

v.

COREY J. HUDSON,

        Defendant.

KARIN J. IMMERGUT
United States Attorney
**THOMAS H. EDMONDS**
**AMY E. POTTER**
Assistant United States Attorneys
1000 S.W. Third St., Suite 600
Portland, OR  97204
(503) 727-1000

        Attorneys for Plaintiff

**MICHELE L. KOHLER**
MICHELE L. KOHLER, P.C.
618 N.W. Glisan, Suite 203
Portland, OR  97209
(503) 224-3127

        Attorney for Defendant

1  -  OPINION AND ORDER

**BROWN, Judge.**

This matter comes before the Court on Defendant Corey J. Hudson's Motion for *Daubert* Hearing (#56) in which Defendant challenges the qualifications of the government's experts; the reliability of the experts' testing procedures and conclusions; and, as a result, the admissibility of the evidence the government proposes to present at trial. Also before the Court is Defendant's Motion for Discovery (#63).

For the reasons that follow, the Court denies Defendant's challenges to the government's proposed expert testimony and, therefore, **DENIES** Defendant's Motion for *Daubert* Hearing. In addition, based on defense counsel's statements at the evidentiary hearing held November 20, 2006, that the parties have resolved the issues raised in Defendant's Motion for Discovery, the Court deems that Motion to be **MOOT**.

### BACKGROUND

On December 7, 2005, Defendant was charged in a one-count Indictment with Felon in Possession of a Firearm in violation of 18 U.S.C. § 924(d) and 28 U.S.C. § 2461(c). The facts underlying this matter are set out in the Court's Opinion and Order issued September 13, 2006, and, therefore, need not be repeated here.

On August 16, 2006, the Court denied Defendant's Motion to Suppress after holding an evidentiary hearing and hearing oral argument.

On August 17, 2006, Defendant filed a Motion in Limine in which he sought an order excluding from trial, *inter alia,* the government's evidence of gang affiliation, ballistics evidence, and DNA evidence primarily on the grounds that this evidence is not relevant to the charges against Defendant and, in any event, the prejudice to Defendant outweighs the probative value of the evidence. The Court denied Defendant's Motion in Limine as set out in its September 13, 2006, Opinion and Order.

On October 23, 2006, and November 15, 2006, respectively, Defendant filed a Motion for *Daubert* Hearing and a Motion for Discovery. As noted, Defendant's Motion for Discovery is moot.

In his Motion for *Daubert* Hearing, Defendant challenged the admissibility of the fingerprint, DNA, ballistics, and gang-affiliation evidence the government proposes to present at trial. On November 20, 2006, the Court held an evidentiary hearing on Defendant's Motion. The government presented expert witnesses who testified as to their qualifications; the procedures used to test the fingerprint, DNA, and ballistics evidence; and their conclusions in their respective areas of expertise. Defendant did not present any live or other form of expert testimony.

At the end of the November 20, 2006, hearing, the Court held the government's fingerprint and DNA evidence is admissible at trial. Specifically, the Court found:

    1. The government's witnesses were qualified to testify as experts in their respective fields and, in turn, to testify to the scientific reliability of the procedures used to test and to evaluate the government's proposed fingerprint and DNA evidence;

    2. Those procedures satisfied the requirements of *Daubert* in that they were subjected to peer review and publication, the potential error rate was identified and not significant for purposes of the Court's gatekeeping function, and the testing was performed according to standard operating procedures that are generally accepted in the scientific community as reliable techniques used to evaluate both fingerprint and DNA evidence; and

    3. The experts relied on the test results as the basis for forming their opinions and drawing inferences in regard to the government's proposed fingerprint and DNA evidence.

In addition, the Court finds the experts' opinions are relevant to the issues in this case.

Toward the end of the proceedings, the Court granted Defendant leave to supplement his challenge to the government's ballistic evidence as to toolmarking. The Court also directed

the government to make Portland Police Officer Michael J. Stradley, who the government proposes to call at trial as an expert on gangs, available to defense counsel for an interview during a recess of the November 20, 2006, hearing.  When the hearing reconvened, Defendant did not request to examine Officer Stradley in open court.  The Court, therefore, directed the government to submit a proffer as to Officer Stradley's qualifications and proposed testimony at trial relating to the gang affiliation of Defendant and the co-occupants of the van in which Defendant was found by Portland police officers.  The supplemental brief and proffer were due no later than November 24, 2006.

Accordingly, on November 24, 2006, the Court took under advisement Defendant's Motion for *Daubert* Hearing as to the admissibility of the government's proposed ballistics and gang-affiliation evidence.

A three-day jury trial is scheduled to commence on December 18, 2006.

### **STANDARDS**

Federal Rule of Evidence 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the

5   -   OPINION AND ORDER

>testimony is based upon sufficient facts or date, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

*Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993), applies Rule 702 and governs the admissibility of scientific expert testimony. Although the *Daubert* Court does not set out an exhaustive or "definitive checklist" for evaluating the admissibility of scientific expert testimony, the primary inquiry is:

>1. Whether the theory or technique can be or has been tested,
>
>2. Whether the theory or technique has been subjected to peer review and publication,
>
>3. Consideration of the known or potential rate of error in the case of a particular scientific technique,
>
>4. Consideration of the existence and maintenance of standards controlling the technique's operation (this element is similar to #3 and the two are sometimes combined),
>
>5. Whether the theory or technique is generally accepted in the relevant scientific community, and
>
>6. Whether the expert relied on the results of the tests in forming his opinion and in drawing inferences

regarding the evidence at issue.

*Id*. at 593-95.

The district court also must ensure expert testimony is relevant as well as reliable. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 148-50 (1999). The court's gatekeeping function extends to all expert testimony and not merely to scientific expert testimony. *Id*. at 147.

The government must establish its proposed expert testimony is admissible by a preponderance of the evidence. *See Bourjaily v. United States*, 483 U.S. 171, 175 (1987)(court shall ensure the evidence admitted at trial satisfies the technical requirements of the Federal Rules of Evidence by a preponderance of the evidence).

## **DISCUSSION**

Defendant challenges the admissibility of the government's proposed expert testimony as to ballistics and gang affiliation on the basis that the witnesses are not necessarily qualified to testify as experts; the methods and procedures used to evaluate the evidence are not reliable; and, therefore, the government's proposed expert testimony does not satisfy the requirements of *Daubert* and *Kumho*.

1.  **Ballistics**

Defendant contends the forensic testing of the firearm identified in the Indictment does not satisfy the standards of *Daubert*. Specifically, in his pleadings and during the cross-examination of Travis Gover, the government's witness regarding "toolmark" identification, Defendant challenged Gover's qualifications and the reliability of the examination and evaluation of the toolmark characteristics that were used to determine whether certain bullets or cartridge casings came from the particular firearm at the heart of this case.

After hearing and evaluating the qualifications and sworn testimony of Gover, the Court finds:

a.  Based on Gover's background and experience as a forensic scientist with the Oregon State Police whose specialty is firearm and toolmark identification, Gover is qualified to testify as to the scientific reliability of the procedures used by the Oregon State Police to test and to evaluate the toolmarking relevant to this case.

b.  The procedures used by the Oregon State Police for firearm and toolmark identification in this case are based on the Association of Firearm and Toolmark Examiners Manual and satisfy the requirements of *Daubert* in that those procedures have been subjected to peer review and publication and were performed according to standard operating procedures that are generally

accepted in the scientific community as reliable.

       c.  Defendant asserts the potential error rate in "associating" a bullet or cartridge casing with a particular firearm through toolmark analysis is sufficient to form the basis for a challenge to the reliability of the testing results. Gover, however, explained without equivocation, and Defendant did not refute the point, that the potential error rate in associating a bullet or a cartridge casing with certainty to a particular firearm merely means the examiner is unable to eliminate the possibility that those bullets or cartridges were fired from that particular firearm.  In other words, the inability to associate a bullet or cartridge casing with a particular firearm through toolmark analysis does not lead to a conclusion or create an inference that the casings and bullet fragments were "misidentified" as having been fired from a different firearm, but, as in this case, merely means the firearm being examined cannot be eliminated as the weapon that possibly made the particular toolmarks.  The Court finds this explanation credible.  Thus, the Court concludes the identified potential error rate is insignificant for purposes of the Court's gatekeeping function.  The Court notes, however, the potential error rate may affect the weight that a trier of fact attributes to the particular procedure and to the conclusions offered by the expert witness.

9   -   OPINION AND ORDER

   c.  Gover's opinions related to the government's proposed toolmark and firearm evidence are based on and rely on the results of the testing.

   d.  Gover's opinions are relevant to the issues in this case.

In his Reply and Supplemental *Daubert* Brief, Defendant also raises the possibility that the government may seek to introduce evidence and expert testimony relating to "trajectory analysis" and notes the government did not produce an expert at the *Daubert* evidentiary hearing to support any offering of this type of evidence.  In a telephone conference held December 4, 2006, however, the government stated to the satisfaction of defense counsel and the Court that it did not intend to introduce evidence of or expert testimony about "trajectory analysis" at trial.  The Court, therefore, need not reach this issue.

In summary, the Court concludes the proposed expert testimony as to the government's ballistics evidence arising from toolmark analysis is admissible, and the Court's gatekeeping function on this issue is satisfied as required under *Daubert*.

2.  **Gang Affiliation**

Expert testimony as to gang affiliation is not necessarily subject to the exact scrutiny required under *Daubert*.  *United States v. Hankey,* 203 F.3d 1160, 1168 (9th Cir. 2000).  As noted, the *Daubert* test was not intended to be definitive.  "[R]eason-

10  -  OPINION AND ORDER

able measures of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine." *Kumho Tire Co.*, 526 U.S. at 153 (citation omitted). The Court must evaluate the reliability and relevancy of some kinds of testimony based "on the knowledge and experience of the expert, rather than the methodology or theory behind it." *Id.* at 152 (citation omitted). The measure is whether the expert has the knowledge in question and whether the proposed testimony would assist the trier of fact pursuant to the requirements of Federal Rule of Evidence 702. *Id.* at 150-52.

In his Motion, Defendant challenged the admissibility of testimony proposed by the government regarding the gang affiliation of Defendant and the co-occupants of the van in which police found Defendant. Defendant indicated he was uncertain about the expertise of the witness and the extent of the witness's testimony.

As noted, at the November 20, 2006, hearing, the government stated it proposed to offer the testimony of Officer Stradley as to the gang affiliation of Defendant and the co-occupants of the van. Although the Court directed the government to make Officer Stradley available to defense counsel for an interview during a recess of the *Daubert* proceedings, Defendant did not request to examine Officer Stradley in open court when the proceedings reconvened. The Court, therefore, ordered the government to

submit a proffer as to Officer Stradley's qualifications as an expert on gang affiliations and a summary of his proposed testimony at trial. On November 24, 2006, the government filed Officer Stradley's Affidavit with the Court.

After reviewing Officer Stradley's Affidavit, the Court finds Officer Stradley's experience and knowledge qualify him to testify about gang affiliations and, in particular, the Hoover Crips gang, which is the gang affiliation at issue, and to offer his opinion as to the gang affiliation of Defendant and the co-occupants of the van. *See United States v. Padilla*, 387 F.3d 1087, 1094 (9th Cir. 2004). In addition, the Court concludes Officer Stradley's testimony is relevant to the matters at issue and, therefore, is admissible at trial. As set forth in the Court's Opinion and Order issued September 13, 2006, however, evidence of the gang affiliation of Defendant and the co-occupants of the van, including their attire, is admissible only to prove constructive and joint possession of the firearm that is the subject of the charges against Defendant.

Accordingly, the Court's gatekeeping function on this issue is satisfied as required under *Daubert*, *Kumho*, and *Hankey*.

## CONCLUSION

For these reasons, the Court **DENIES** Defendant Corey J. Hudson's Motion for *Daubert* Hearing (#56) as to its substance and

12   -   OPINION AND ORDER

deems Defendant's Motion for Discovery (#63) to be **MOOT**.

    IT IS SO ORDERED.

    DATED this 5th day of December, 2006.


                                              _/s/ Anna J. Brown_
                                              ANNA J. BROWN
                                              United States District Judge